**[J-133-2016 and J-134-2016] [MO: Todd]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | |
|---|---|
| SUGARHOUSE HSP GAMING, L.P., | : No. 124 EM 2016 |
| | : |
| Petitioner | : Appeal from the Supplemental |
| | : Adjudication of the Pennsylvania |
| | : Gaming Control Board in the matter of |
| v. | : the Applications for the Category 2 Slot |
| | : Machine License in the City of the First |
| | : Class, Philadelphia, dated June 23, |
| PENNSYLVANIA GAMING CONTROL | : 2016 |
| BOARD, | : |
| | : SUBMITTED: November 7, 2016 |
| Respondent | : |
| | : |
| STADIUM CASINO, LLC, | : |
| | : |
| Intervenor | : |
| | : |
| MARKET EAST ASSOCIATES, LP, | : No. 125 EM 2016 |
| | : |
| Petitioner | : Appeal from the Supplemental |
| | : Adjudication of the Pennsylvania |
| | : Gaming Control Board in the matter of |
| v. | : the Applications for the Category 2 Slot |
| | : Machine License in the City of the First |
| | : Class, Philadelphia, dated June 23, |
| PENNSYLVANIA GAMING CONTROL | : 2016 |
| BOARD, | : |
| | : SUBMITTED: November 7, 2016 |
| Respondent | : |
| | : |
| STADIUM CASINO, LLC, | : |
| | : |
| Intervenor | : |

**CONCURRING OPINION**

**JUSTICE BAER**                                             **DECIDED: June 20, 2017**

I join the majority opinion in substantial part, but I write separately to distance myself from my colleagues' definition of "financial interest" for purposes of Section 1330 of the Pennsylvania Race Horse Development and Gaming Act ("Gaming Act"), which prohibits a "slot machine licensee, its affiliate, intermediary, subsidiary or holding company" from "possess[ing] an ownership or financial interest that is greater than 33.3% of another slot machine licensee" or other related entities. 4 Pa.C.S. § 1330.[1]

---

[1] 4 Pa.C.S. § 1330, entitled "Multiple slot machine license prohibition," provides in full:

> No slot machine licensee, its affiliate, intermediary, subsidiary or holding company may possess an ownership or financial interest that is greater than 33.3% of another slot machine licensee or person eligible to apply for a Category 1 license, its affiliate, intermediary, subsidiary or holding company. The board shall approve the terms and conditions of any divestiture under this section. Under no circumstances shall any such divestiture be approved by the board if the compensation for the divested interest in a person eligible to apply for a Category 1 license exceeds the greater of the original cost of the interest, the book value of the interest or an independently assessed value of the interest one month prior to the effective date of this part and, in the case of a person eligible to apply for a Category 1 license, unless the person acquiring the divested interest is required to continue conducting live racing at the location where live racing is currently being conducted in accordance with section 1303 (relating to additional Category 1 slot machine license requirements) and be approved for a Category 1 slot machine license. No such slot machine license applicant shall be issued a slot machine license until the applicant has completely divested its ownership or financial interest that is in excess of 33.3% in another slot machine licensee or person eligible to apply for a Category 1 license, its affiliate, intermediary, subsidiary or holding company.

Unlike the Majority Opinion, I view "financial interest" broadly to encompass ownership interests. *See* Maj. Op. at 35 n.31.

As the Majority and the parties have observed, "financial interest" is not defined in Section 1330. The term, however, is defined in Sections 1201 and 1512. While I agree that the definitions in Section 1201 and 1512 are limited to those specific sections, I find guidance in the definitions which substantially overlap with each other and conform to a common understanding of the term "financial interest."

Section 1201 provides various restrictions on those who may serve on the Gaming Control Board, including limiting a board member's "financial interest" in an applicant or licensed facility. It defines "financial interest" as "[a]n ownership, property, leasehold or other beneficial interest in an entity." 4 Pa.C.S. § 1201(n).[2] It further

---

[2] 4 Pa.C.S. § 1201, entitled "Pennsylvania Gaming Control Board established," provides in relevant part:

> (n) Definitions. - As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> "Financial interest." An ownership, property, leasehold or other beneficial interest in an entity. The term shall not include an interest which is held or deemed to be held in any of the following:
>
> (1) Securities that are held in a pension plan, profit-sharing plan, individual retirement account, tax-sheltered annuity, a plan established pursuant to section 457 of the Internal Revenue Code of 1986 (Public Law 99-514, 26 U.S.C. § 1 et seq.), or any successor provision, deferred compensation plan whether qualified or not qualified under the Internal Revenue Code of 1986, or any successor provision, or other retirement plan that:
>
> (i) is not self-directed by the individual; and

(continued...)

explains that an "ownership interest," for purposes of the term's inclusion in financial interest, encompasses "[o]wning or holding, or being deemed to hold, debt or equity securities or other ownership interest or profit interest." *Id.* The subsection additionally excludes from the term "financial interest" three categories of passive holdings, including pension plans and individual retirement accounts, Section 529 tuition plans, and mutual funds which are not self-directed. Notably, the Board adopted this definition nearly verbatim in its regulation relevant to the Board's operations and organization. 58 Pa. Code § 403a.1.

Similarly, Section 1512 limits certain government-affiliated individuals from having a financial interest in licensees or certain related entities. The section defines "financial interest" in very similar terms to Section 1201's definition.[3] As in Section

_____

(...continued)

> (ii) is advised by an independent investment adviser who has sole authority to make investment decisions with respect to contributions made by the individual to these plans.
>
> (2) A tuition account plan organized and operated pursuant to section 529 of the Internal Revenue Code of 1986 (Public Law 99-514, 26 U.S.C. § 529) that is not self-directed by the individual.
>
> (3) A mutual fund where the interest owned by the mutual fund in a licensed entity does not constitute a controlling interest as defined in this part.
>
> "Ownership interest." Owning or holding, or being deemed to hold, debt or equity securities or other ownership interest or profit interest.

[3] 4 Pa.C.S. § 1512(b), entitled "Financial and employment interests," defines "financial interest" for purposes of the section as follows:

> "Financial interest." Owning or holding, or being deemed to hold, debt or equity securities or other ownership interest or

(continued...)

1201, financial interest for purposes of Section 1512 includes "[o]wning or holding, or being deemed to hold, debt or equity securities or other ownership interest or profits

profits interest. A financial interest shall not include any debt or equity security, or other ownership interest or profits interest, which is held or deemed to be held in any of the following:

(1) A blind trust over which the executive-level public employee, public official, party officer or immediate family member thereof may not exercise any managerial control or receive income during the tenure of office and the period under subsection (a). The provisions of this paragraph shall apply only to blind trusts established prior to the effective date of this paragraph.

(2) Securities that are held in a pension plan, profit-sharing plan, individual retirement account, tax-sheltered annuity, a plan established pursuant to section 457 of the Internal Revenue Code of 1986 (Public Law 99-514, 26 U.S.C. § 1 et seq.) or any successor provision deferred compensation plan whether qualified or not qualified under the Internal Revenue Code of 1986 or any successor provision or other retirement plan that:

(i) is not self-directed by the individual; and

(ii) is advised by an independent investment adviser who has sole authority to make investment decisions with respect to contributions made by the individual to these plans.

(3) A tuition account plan organized and operated pursuant to section 529 of the Internal Revenue Code of 1986 (Public Law 99-514, 26 U.S.C. § 529) that is not self-directed by the individual.

(4) A mutual fund where the interest owned by the mutual fund in a licensed entity does not constitute a controlling interest as defined in this part.

interest," and excludes the same three categories of passive holdings. In addition to the exclusions allowed for Board Members, Section 1512 provides that the various government-affiliated individuals may also hold interest in assets held in a blind trust. The definition of financial interest in Section 1512 does not specifically include Section 1201's incorporation of "property, leasehold or other beneficial interest in an entity." 4 Pa.C.S. § 1512 "Financial Interest" (1). Therefore, Section 1201's definition of "financial interest" is arguably broader than Section 1512. Understandably, the Gaming Act is more restrictive in regard to the financial holdings of Gaming Control Board members under Section 1201 than the broader category of governmental-affiliated individuals governed by Section 1512.

While the General Assembly did not specifically apply either of these definitions to Section 1330's prohibition against a licensee or related entity holding a financial interest greater than 33.3% in another slot machine licensee or related entity, I nonetheless find the definitions useful in considering the term's meaning in regard to Section 1330, particularly because the definitions conform to the "common and approved usage" of the term "financial interest" as required by our rules of statutory construction. 1 Pa.C.S. § 1903(a). Under both definitions, "financial interest" includes ownership interest, which is defined to encompass the holding of debt or equity securities and a profit interest. Likewise, the definitions exclude various passive holdings that are not subject to the direction of the individual.

To the extent that the definitions of financial interest in Sections 1201 and 1512 differ, I would adopt the more expansive definition for purposes of Section 1330 to satisfy the stated legislative intent "to prevent possible monopolization by establishing reasonable restrictions on the control of multiple licensed gaming facilities in this Commonwealth." 4 Pa.C.S. § 1102(5). Thus, while specified government-affiliated

individuals may hold interest in licensees in a blind trust under Section 1512, blind trusts should not be excluded from the term "financial interest" for a licensee or other entity governed by Section 1330 as is the case with Gaming Control Board members under Section 1201. Additionally, the term under Section 1330 should also include "property, leasehold or other beneficial interest in an entity" as included in Section 1201, but not specifically stated in Section 1512.

I respectfully reject the suggestion that "financial interest" does not include ownership interest. It is beyond cavil that an owner of a casino has a financial interest in the casino, regardless of how a dictionary defines "financial." Moreover, the General Assembly has repeatedly defined financial interest in the Gaming Act to include ownership interest. In my view, the use of the disjunctive "or" in the phrase "ownership or financial interest" should not be read to require careful delineation of interests as either ownership or financial, which presents the possibility that an "interest" might not fall neatly into either category. Instead, the phrase "ownership or financial interest" should be viewed as a complete phrase, which includes ownership as one form of the broader category of financial interests in order to implement the legislative intent to prevent monopolization. Additionally, I agree with the Board that the ownership or financial interest must be quantifiable in order for the Board to determine if the 33.3 percent statutory threshold is reached.

Viewing the term "ownership or financial interest" broadly, I concur with the Majority Opinion that the term includes loans, which, based upon their structure or significance, may provide the lender with an interest in or claim upon the borrower relevant to the General Assembly's intent to "prevent possible monopolization." 4 Pa.C.S. § 1102. However, I question the Majority's reliance on the term "debt or equity securities" as used in 4 Pa.C.S. § 1311, as well as Sections 1201 and 1512, to

encompass loans within the phrase "financial interest" when the term "debt securities" is commonly used to reference bonds rather than loans generally. Additionally, I emphasize Market East's observation that the inclusion of loans in Section 1330's "ownership or financial interest" would not generally relate to large commercial lenders so long as they are not a "slot machine licensee, its affiliate, intermediary, subsidiary or holding company." 4 Pa.C.S. § 1330.

While I differ in my view of "ownership or financial interest," I nevertheless join the Majority Opinion's remand for reconsideration of Mr. Manoukian's interest in Stadium Casino L.L.C., including his interest in Sterling Investors Trust.